25 F.3d 1054
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Paul A. MEEGAN, Defendant-Appellant.
 No. 93-3595.
 United States Court of Appeals, Seventh Circuit.
 Argued March 31, 1994.
Decided June 1, 1994.
 
 Before POSNER, Chief Judge, and CUMMINGS and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 In March 1993, the United States Attorney filed an information in the Northern District of Illinois charging defendant Paul Meegan in three counts alleging failure to file income tax returns for 1986, 1987, and 1988 in violation of 26 U.S.C. Sec. 7203. Meegan pleaded not guilty. The case was set for trial on May 17, 1993. At Meegan's request, the trial date was reset three times, but the court subsequently set a final trial date of July 7, 1993. On that date the trial court empaneled a venire for jury selection. Thereupon Meegan changed his plea to guilty. Sentencing was ordered for September 9, 1993, and the court ordered the Probation Department to prepare a Presentence Investigation Report (PSI).
 
 
 2
 By pleading guilty, Meegan admitted to failing willfully to file income tax returns for 1986, 1987, and 1988. In those years he had earned respectively $99,495.00, $60,679.00, and $34,222.88. Relying on the PSI, the government argued at the sentencing hearing that Meegan had filed false tax forms and used a fraudulent Social Security account number to avoid paying taxes on that income, causing a loss to the United States of $21,317.82.
 
 
 3
 The PSI showed that Meegan also failed to file tax returns for 1980 through 1985 and for 1989 through 1992. The loss to the government for 1980 through 1985 was $39,228. The amount lost was also said to be substantial for the tax years 1989 through 1992, although the figures had not yet been calculated at the time of sentencing. For the twelve years in which Meegan failed to file income tax returns the known loss to the United States was more than $60,545.82.
 
 
 4
 After his guilty plea, Meegan advised the Probation Department prior to the preparation of the PSI that he had not filed income tax returns for a number of years because he spent all of his money on drugs and alcohol that fogged his perception.
 
 
 5
 Meegan received the PSI two days before sentencing, and the trial judge permitted him and his lawyer as much time as they requested to review it. The PSI recommended that the government's tax losses in 1980 through 1988 be considered in sentencing, even though the information had charged him only with failure to file returns in 1986 through 1988. The Probation Department believed the tax losses in 1980 through 1985 to be "relevant conduct" within the meaning of Guidelines Secs. 1B1.2(b) and 1B1.3(a)(2) because Meegan's failure to file in those years was "part of the same course of conduct or common scheme or plan" as his failure to file in 1986 through 1988. Consequently, the Probation Department calculated the loss for Guidelines purposes to be $60,545.82, giving Meegan an offense level of 10 under Sec. 2T1.2(a)(1) of the Guidelines in effect at the time of sentencing.
 
 
 6
 The Probation Department found that defendant had not accepted responsibility within the meaning of Guidelines Sec. 3E1.1(a) and therefore that he was not eligible for a reduction in points based on that section. The finding was based in part on defendant's not having demonstrated true remorse for his behavior, blaming it on his substance usage rather than on himself.
 
 
 7
 The Probation Department calculated Meegan's criminal history category to be IV. This was based on his August 1992 Illinois conviction for odometer fraud and other automobile-related fraud charges in Wheaton, Illinois. Meegan had pleaded guilty to those charges and received a sentence of three years incarceration. However, he had served only four days of that sentence at the time of sentencing herein, and the conviction was on appeal.
 
 
 8
 At the sentencing, defendant's attorney presented several objections to the findings in the PSI but the objections were overruled. Judge Hart stated that he would give weight to the Probation Department's assessment of lack of remorse, but the judge* also said he was relying on the lateness of the guilty plea. Defendant was sentenced to three consecutive six month sentences, plus one year's supervised release. He was also ordered to pay $2000 to the government for its prosecution costs.
 
 
 9
 Denial of Two-Point Reduction in Offense Level for Acceptance of Responsibility
 
 
 10
 At the sentencing, the district court adopted the Probation Department's recommendation that Meegan was not entitled to a reduction in his offense level for acceptance of responsibility under Guidelines Sec. 3E1.1(a).
 
 
 11
 Defendant states that the district judge denied Meegan a reduction in offense level for acceptance of responsibility "solely upon the lateness of [the] guilty plea." However, that is an incorrect assessment because the trial judge stated he was also giving weight to the probation officer's finding of lack of remorse. As the PSI noted, Meegan's statement blaming substance abuse for his crimes militated against finding that he was truly remorseful. The judge also gave weight to the defendant's disregard of the criminal justice system (Sentencing Tr. 18). Lack of acceptance of responsibility was therefore adequately demonstrated. See United States v. Beserra, 967 F.2d 254 (7th Cir.1992), certiorari denied, 113 S.Ct. 419; United States v. Reno, 992 F.2d 739, 744 (7th Cir.1993), certiorari denied, 114 S.Ct. 458.
 
 Timing of Guilty Plea
 
 12
 Meegan contends that in denying him credit for an acceptance of responsibility, the district court should not have considered his last-minute plea of guilty as a factor. This argument fails under United States v. Tolson, 988 F.2d 1494 (7th Cir.1993), where we stated that defendants must manifest an acceptance of responsibility in a timely fashion, id. at 1498. See also United States v. Kerr, 13 F.3d 203, 205 (7th Cir.1993), certiorari denied, 1994 WL 112015 (Apr. 25, 1994). In accord with Tolson, the district judge explained that the defendant's late plea wasted the time and effort of the courts, the jurors, and the government. Meegan argues that subsequent amendments to the Guidelines rendered Tolson inapplicable to his case. The amendment to Sec. 3E1.1 to which Meegan refers is inapplicable, however, because it applies only to crimes with offense level of 16 or higher, while the offense level for defendant's crime was 10. Moreover, the commentary to Sec. 3E1.1(a) still states that "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility" is an appropriate consideration. U.S.S.G. 3E1.1, Application Note 1. As the Commission explained in 1992, "Entry of a plea of guilty prior to the commencement of trial " (rather than after a venire has been assembled) is one of the factors to be considered with respect to acceptance of responsibility. U.S.S.G. Sec. 3E1.1, Application Note 3.
 
 
 13
 The district court's denial of two points for acceptance of responsibility was justified.
 
 
 14
 Appropriateness of Government's Tax Losses in Considering Relevant Conduct
 
 
 15
 Defendant argues that the trial court should not have considered the tax years 1980 through 1985 as relevant conduct. However, the Sentencing Guidelines required Judge Hart to consider "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. Sec. 1B1.3. Therefore, the Probation Department and trial court properly considered the tax loss attributable to defendant not only for the years 1986-1988 but also by referring to defendant's failure to file during the previous years. Meegan also complains that the trial court should not have considered the tax years 1980 through 1985 because the statute of limitations had run as to those years. This point was never raised below and was therefore we may review this issue only for plain error. Two other Circuits have held that the statute of limitations does not restrict the scope of relevant conduct under the Guidelines, United States v. Pierce, 17 F.3d 146, 150 (6th Cir.1994); United States v. Lokey, 945 F.2d 825, 840 (5th Cir.1991). Moreover, this is not contrary to the language of the Guidelines, which provides in Sec. 1B.3 for the consideration of "all acts or commissions" in furtherance of the common scheme or plan.
 
 
 16
 Attribution of Criminal History Points to the Defendant for a Prior State Conviction
 
 
 17
 Defendant argues that the district court should not have increased his criminal history category based upon a 1992 Wheaton, Illinois sentence that was then under appeal. However, Sec. 4A1.2(1) of the Guidelines provides that with certain inapplicable exceptions "prior sentences under appeal are counted." Therefore, it was appropriate for the court below to increase Meegan's criminal history category based upon the recent state conviction.
 
 
 18
 Sentencing Judgment Affirmed.
 
 
 
 *
 Judge Hart and the Probation Department did not increase the criminal history calculation on account of six other prior convictions for which defendant received probation (Sentencing Tr. 9-11)